## FARMERS' LOAN & TRUST CO. et al. v. BOWERS (two cases).

Nos. 331, 332.

Circuit Court of Appeals, Second Circuit.

Aug. 4, 1938.

Taylor, Blanc, Capron & Marsh, of New York City (John W. Davis, Mansfield Ferry, Philip M. Payne, and William F. Hamilton, all of New York City, of counsel), for appellants.

Lamar Hardy, U. S. Atty., and Leon Spencer, Asst. U. S. Atty., both of New York City (James W. Morris, Asst. Atty. Gen., and William Stanley, Sewall Key, and Carlton Fox, Sp. Assts. to Atty. Gen., of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

William Waldorf Astor died at Brighton, England, on October 18, 1919, at seventy-one years of age. On May 25, 1916, he had created a trust in favor of his two sons and their issue in all of the American securities he then possessed which at that time were of the value of $23,641,-262.14, and on January 2, 1917, executed American and English wills. The American will contained a testamentary trust of his residuary estate consisting almost wholly of New York City real estate of the value at the time of his death of $46,421,545. This real estate became the subject of two deeds of trust dated August 15, 1919, one for Waldorf Astor, the elder son of the settlor, with remainders over, and the other for John Jacob Astor, the younger son, likewise with remainders over. Each of the two reserved to the settlor a tax free annuity of $150,000 payable out of income but if insufficient out of the corpus.

The Farmers Loan and Trust Company, as trustee under the deeds of trust of the real estate, brought actions against Frank K. Bowers, a Collector of Internal Revenue, to recover estate taxes to the amount of $5,405,428.99 and interest which had been exacted in respect of each of the foregoing trusts. Upon the death of Frank K. Bowers

the actions were continued against his executor as defendant and were tried together.

The main issues before this court are whether the trusts were made "in contemplation of death" within the provisions of the Revenue Act of 1918, § 402 (c), 40 Stat. 1097, and whether, in view of the plaintiff's evidence, the trial judge erred in his charge to the jury. There is the minor question whether, if the trusts were so made and were, therefore, subject to the federal estate tax, trustee's commissions ought not to have been deducted from the corpus of the trusts in computing the estate taxes.

Upon the former trial which was held by the court without a jury the trustee obtained judgments for the recovery of the estate taxes. On appeal the judgments were reversed (Farmers Loan & Trust Co. v. Bowers, 2 Cir., 68 F.2d 916), on the ground that the court had erred in failing to apply the proper rule of law in a case where the trust settlements were actuated by more than one substantial motive. The principal defense made upon the first trial was that avoidance of income as well as of estate taxes actuated the creation of the trusts and that saving of income taxes was the controlling motive. While there was some evidence at the first trial that avoidance of a capital levy was also a motive, the trustee introduced far more testimony at the second trial than at the first in respect to the settlor's fear of a capital levy and contended that it furnished the controlling motive for the settlements. It is claimed that if fear of a capital levy was the dominant or weightier motive, the trusts were not made in contemplation of death.

In solving the question whether the transfers were made in contemplation of death, the critical point is whether this court on the former appeal correctly interpreted the statute taxing transfers made in contemplation of death in view of the decision of United States v. Wells, 283 U.S. 102, 103, 51 S.Ct. 446, 447, 75 L.Ed. 867—in short whether our former opinion went beyond what was permissible because of the language of the Supreme Court in the latter case.

It is argued with great earnestness on behalf of the appellant trustee that the additional evidence as to Astor's fear of a capital levy made it at least a question for the jury whether that fear was not the dominant motive for making the settlements and we

shall assume for purposes of argument that the jury might have found that it was. But the conclusion was inevitable that the desire to avoid estate taxes was also a substantial motive. In dealing with these matters in his charge the court told the jury that if they concluded: "* * * from all the evidence in the case that there were several motives for the transfers—one being to avoid the estate tax, another being to avoid or reduce income tax, and still another being to escape a possible capital levy by the British Government, and if you are of the belief that the motive of avoiding the estate tax played a substantial part in causing Astor to make the transfers, the transfers must be held to have been made in contemplation of death, and your verdict should be for the defendant."

After the jury had retired to consider their verdict they returned twice for further instructions. The material parts of the record bearing on the court's reply to the jury's questions read as follows:

"The Court: * * * The first (inquiry) is: 'A complete and definite definition of the word "substantial" as used in the Judge's charge.'

"I mean by 'substantial' considerable, material, not trifling, not inconsequential. When you speak of a 'substantial' part of a man's estate, you mean—oh, I do not know —10 per cent or 20 per cent or something like that. Now, that is 'substantial'. I would say that 1 per cent is probably not substantial. It means fair-sized.

"The second note is this:

" 'If—a suppositional case—a juror felt that at the time Astor made the trust his motives were estate taxes 35 per cent, income taxes 20 per cent, capital levy, 45 per cent (total) 100 per cent, what should be the jurors' finding under the terms of the Judge's charge?'

"I charged you that if you found that several motives caused Astor to make these trust settlements of August 15, 1919—one motive to avoid estate tax, another motive to avoid income tax, a third motive to avoid a possible capital levy—and if you found that the motive to avoid estate tax contributed a substantial amount or a material amount, or played a considerable part—as it would, if it were 35 per cent—if you can value it in percentage in that way— that then you should find a verdict for the defendant. That such a transfer would be one in contemplation of death. I so charg-

ed, and that covers that question." Record pp. 509, 510.

An hour later the jury again returned presenting the following written inquiry to the judge: "Are we obligated to accept the interpretation of the word 'substantial' as defined by his Honor in his charge. Is this definition a matter of law, or of facts?" Page 512.

The following instructions were then given:

"The meaning of the word 'substantial', whether you take it as a matter of fact or matter of law, is the meaning that I gave, and as it was part of my charge on the law, you can take it as matter of law. I think the part you refer to is where I said that if the purpose of evading estate tax formed a substantial cause in inducing Astor to create these trust deeds, that then the transfers were in contemplation of death, and you should find a verdict for the defendant. I can only say that that is matter of law, and you may substitute for the word 'substantial', if you like, 'material' or 'considerable'. Those words are synonymous. But that is matter of law, as I charged you in my charge before. That is not matter of fact. It is for you to say whether that motive was substantial, in that sense.

"A Juror: Your Honor, your definition was 10 or 20 per cent? Is that correct?

"The Court: I cannot be pinned down to a figure, gentlemen. One of you suggested figures on a percentage basis. 'Substantial,' 'material', 'considerable', 'consequential', or a 'fair-sized' cause. A fair-sized cause would describe it—not necessarily 51 per cent or 50 per cent. It is hard to figure these things on a percentage basis.

"A Juror: Out of $100, what would you consider a substantial amount?

"The Court: Well, I might consider $20 a substantial amount, or $15 a substantial amount, but that I cannot charge you as matter of law, of course. I think that answers your query. Where I used that expression, I was charging you on the law of the case. There were a couple of sentences in the charge toward the end where I said that if there were several motives, and the motive of evading or escaping or avoiding estate tax was one of the motives, and played a substantial part, a material part, a considerable part, in persuading the donor in this case to make those transfers, that then they were transfers made in con-

templation of his death by him, and taxable under the Estate Law, and your verdict should be for the defendant." Record, pp. 512, 513.

From the foregoing extracts from the record it seems evident that the judge did not charge that a motive to avoid estate taxes if found to contribute only 10 per cent of the total motives actuating the transfers would require a verdict for the defendant. On the contrary, he instructed the jury the very last thing that it was for them to say what amounted to a substantial motive, adding that personally he might consider $20 or $15 out of $100 as a substantial portion or (if we take into account his earlier illustration) even 10 per cent. But whatever criticism may be made of the judge's illustrations, the evidence demonstrated that avoidance of estate taxes was a substantial motive for the settlor's action. His English counsel preferred to have powers of revocation inserted in the proposed trusts, arguing that no one could tell what would happen and he might need to retain control of the property. Charles A. Peabody, his American counsel, warned him that if powers of revocation were inserted in the trusts the corpus would not escape estate taxes. His English counsel Barchard in his letter of December 3, 1918, stated the nub of the matter when discussing the question of what amounts should be reserved for an annuity and whether powers of revocation should be inserted. He said that these things "must depend largely upon what is the main object of the settlement. If it is to economize in American Income Taxes and death duties, I should attach great importance to Mr. Peabody's advice to dispense with the power of revocation, but if it is for another object and the death duties and income taxes are not regarded as of paramount importance I am all in favor of a power of revocation". With this before him, and to escape estate taxes, the settlor decided in December 1918, to eliminate powers of revocation. The trust instruments were finally drawn up without such powers and executed August 15, 1919. The elimination of the powers of revocation to save death duties (amounting to millions of dollars) plainly shows that the transfers were made with a substantial death motive in mind. Accordingly, even if the judge's illustration of 10 per cent be regarded as a direction upon a matter of law and as too low, it made no difference because the facts point clearly to the sub-

stantial materiality of estate taxes in the settlor's mind.

The correctness of the charge as to what the jury should regard as a "substantial" motive is not the real problem, but whether the instruction that if "the motive of avoiding the estate tax played a substantial part in causing Astor to make the transfers, the transfers must be held to have been made in contemplation of death, * * *" (Record p. 505), stated the correct rule of law.

The charge was justified under our former decision unless precluded by the language in United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867. In that case the Court of Claims had found that "the immediate and moving cause" (page 449) of certain transfers was the carrying out of a policy of making liberal gifts to the decedent's children during his lifetime and that this cause had overcome the presumption, created by the statute, that the transfers were made in contemplation of death. Hughes, C. J., said in his opinion that the test of whether a transfer was made in contemplation of death is always to be found in motive and that a transfer may be so made, though not induced by fear that death is near at hand. He went on to say that the words "in contemplation of death" mean "that the thought of death is the impelling cause of the transfer" and that gifts inter vivos which spring from a different motive are not within the statute. He added that transfers related to purposes associated with life, rather than with the distribution of property in anticipation of death, may be made either to relieve the donor of cares of management, or to give children responsibilities of business under the guidance of their parents, or to establish them independently with competencies of their own, or to recognize special needs or exigencies, or to discharge moral obligations. He remarked that: "The gratification of such desires may be a more compelling motive than any thought of death." 283 U.S. page 119, 51 S.Ct. page 452. It is, however, to be noticed that there the court was dealing with a case where there had been a finding by the Court of Claims that the transfers were made for the sole purpose of making customary gifts to his children and with no reason to contemplate death other than a reason applicable to all humanity. There was no statement that the court would have held the transfers free from estate taxes if an important motive for making them

had been to save estate taxes. The court said as to the statute: "The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. Nichols v. Coolidge, 274 U.S. 531, 542, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Milliken v. United States, 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809. * * * As the transfer may otherwise have all the indicia of a valid gift inter vivos, the differentiating factor must be found in the transferor's motive. Death must be 'contemplated,' that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. * * *" 283 U.S. at page 117, 51 S.Ct. at page 451. We cannot believe that the general reasoning of the opinion should be taken to exempt gifts inter vivos from taxation where an important death motive, such as the avoidance of estate taxes, existed. Judge Soper, discussing United States v. Wells in Tait v. Safe Deposit & Trust Co. of Baltimore, 4 Cir., 74 F.2d 851, pertinently remarked that (page 854): "* * * a transfer is taxable * * * if the purposes associated with death enter into and form a substantial although a less compelling part of the inducing motives. Apart from the difficulty of appraising the relative value and effect of concurring motives, such a transfer falls within the language of the estate tax act and within the purpose it was designed to meet."

While the Supreme Court may have intended to lay down the rule that even a substantial death motive would not bring a case within the statute if the dominant motive was to relieve the settlor of care, to give his children experience in managing their own affairs, to settle property upon them during his lifetime, or to carry out some other beneficent purpose, we do not think such a rule extends to a situation where a substantial motive to avoid estate taxes is accompanied by motives to escape other kinds of taxation. These remaining motives, though lawful, can hardly be regarded as reasons for engrafting exceptions upon a statute taxing transfers made in contemplation of death generally. These motives differ greatly from the beneficent purposes listed in the Wells Case and are neither included in the statute as grounds of exception, nor made such under any decision.

A comment on the Wells Case in McCaughn v. Real Estate Co., 297 U.S. 606,

56 S.Ct. 604, 80 L.Ed. 879, is relied on by counsel for the trustee but merely says that (page 605): "The principles governing the determination whether a gift inter vivos is made in 'contemplation of death' are set forth in United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867, and need not be restated." We repeat that in our opinion the language of the Wells decision did not deal with a situation like the one before us. Becker v. St. Louis Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35, likewise is not helpful to the trustee for the court there held that no motive associated with death existed.

■ It is contended that a transfer is not made in contemplation of death merely because accompanied by the thought of avoiding estate taxes and similarly that transfers are not necessarily made in contemplation of death because in anticipation of the provisions of the donor's will. It may be true that transfers made by one in good health and in the prime of life were not intended by Congress to be within the statute merely because the transferor had the saving of death duties in mind. But motives such as escaping estate taxes or anticipating testamentary provisions when actuating an old man in failing health who was giving away nearly all his remaining property certainly bring the transfers within a statute aimed at reaching substitutes for testamentary dispositions and preventing evasion of estate taxes. The judge was, therefore, right in charging: "* * * if the purpose of evading estate tax formed a substantial cause in inducing Astor to create these trust deeds, that then the transfers were in contemplation of death, and you should find a verdict for the defendant." Record, p. 512. He was likewise right when he charged as follows in respect to the anticipation by the settlor of the provisions of his will: "If you conclude from the evidence in the case that Astor's purpose was to anticipate the provisions of his 1917 will, and that the dominant motive was to avoid the estate tax, then you are warranted in deciding that the thought of death was the moving cause for making the transfers, and you should bring in a verdict for the defendant." Record p. 504.

■ It is further contended by plaintiffs that the provision of the statute that any gift of a material part of his property made by a decedent within two years prior to his death "shall, unless shown to the contrary, be deemed to have been made in contemplation of death * * *" creates a mere legal presumption which disappears as a factor in the case as soon as any evidence to meet it is introduced. This provision was intended to and does place upon the taxpayer the burden of proving by a fair preponderance of evidence that the transfer within two years of death is not made in contemplation of death.

■ We have examined the other objections referred to in the appellant's brief and think them without merit except as to the plaintiff's cause of action based on failure of the Commissioner to deduct trustee's commissions when assessing the value of the trust estates for taxation. Commissions appear to be allowable under Section 3320 of the New York Code of Civil Procedure (now Section 1548 of the Civil Practice Act), in force in 1919, when the trusts were set up, and are claimed to equal $464,405.45. Although we find no criticism of this amount in the briefs we are not in a position to determine the proper figure without further argument as to the basis on which the commissions should be calculated. It may be questioned whether in reckoning the taxable estate commissions should be deducted except for receiving the corpus and if commissions on distributing the corpus should be deducted at all whether their present worth based on the estimated duration of the trusts would not be the proper deduction. The amount claimed as a proper deduction, namely, $464,405.45 seems to be computed at the full statutory rate for both receiving and paying out. Objections may also be made to deducting commissions based on the value of real estate which has not been reduced to cash by sale, as well as other objections we cannot foresee. It is to be noticed that the New York Supreme Court has thus far only allowed $168,088.49 as commissions to the trustee and that sum only on cash receipts and disbursements from sales of the real estate. The refusal of the court to allow the claim for a refund of taxes on commissions on the ground that the cause of action was not specially pleaded was too technical a ruling. The complaint was for money had and received. It sought a refund of alleged overpayments of taxes which were computed on valuations of the corpus without any deduction for commissions. The court had all the facts before it; there was no surprise; and the complaint should either have been amended as was proposed at the trial by formally pleading

a cause of action to recover the taxes on the commissions, or should have been deemed amended so as to conform to the proof. As we view it, there was nothing involved but a question of law.

The judgments should be affirmed except as to the amount due the plaintiff for taxes on commissions. The parties are directed to submit briefs within twenty days setting forth whatever liability the trust estates may have been under for commissions at the date of the settlor's death and the amount of estate taxes overpaid because of the disregard of liabilities for commissions in computing the estate tax. After determining the amount properly deductible for commissions and the overpayment, if any, of taxes, an order will then be made directing judgment for the plaintiff for the amount of such overpayment, with interest thereon from the date of the original payment of the estate tax, and otherwise affirming the judgment for the defendant.