**BANKERS TRUST CO. v. HIGGINS,**
Collector of Internal Revenue.

No. 277.

Circuit Court of Appeals, Second Circuit.

June 18, 1943.

Josiah Willard and White & Case, all of New York City (Russell D. Morrill, of New York City, of counsel), for appellant.

Marvin M. Notkins and Mathias F. Correa, U. S. Atty., both of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff, the administrator c.t.a. of Emmett A. Saunders, appeals from a summary judgment, dismissing its complaint in

an action to recover the amount of an estate tax, alleged to have been unlawfully collected under the following circumstances. On August 15, 1923, Saunders, then 74 years old, transferred to the plaintiff a number of assorted investment securities in trust, which at the time of his death—January 26, 1933—were worth about $1,300,-000. The trustee was to hold the fund during the lives of seventeen named persons, and to divide the income equally between the settlor and his wife for their joint lives and to pay the whole income to the survivor during his or her life, with remainders over upon the survivor's death not necessary to describe. The clause describing the life interests concluded as follows: "in case the income shall in any year * * * be less than Sixty Thousand ($60,000) Dollars * * * an amount shall be taken from the principal of this trust which added to the income thereof will make Sixty Thousand ($60,000) dollars, and this Sixty Thousand ($60,000) Dollars * * * shall be paid to them or to the survivor of them." The income from the fund during the ten years that Saunders lived after the trust had been set up had never been less than $60,000, so that the trustee had never drawn upon the principal. When he died, aged 84 years, his "expectancy," measured by the mortality tables, was 3.08 years. The Treasury took the position that the whole fund should be included as part of his estate under § 302 (c) of the Revenue Act of 1926, 26 U.S. C.A. Int.Rev.Acts, page 227—the applicable statute—on the theory that Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L. Ed. 604, 125 A.L.R. 1368, and Blunt v. Kelly, 3 Cir., 131 F.2d 632, controlled. The plaintiff on the other hand asserted that the case fell within Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397, and May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244. The judge held with the defendant and dismissed the complaint, because he thought it irrelevant that the amount which remained contingent was inevitably small, and that its "appraisal" was "inapposite on the question of intent, which characterizes the whole trust."

In the year 1923 the statute did not, as it now does (§ 811(c), Title 26 U.S. C.A. Int.Rev.Code), cover what used to be called the "falling in" of vested remainders upon the termination of a preceding life interest. If the right to a remainder did not depend upon any condition which the death of the life holder determined, other than the mere termination of the preceding interest, the Supreme Court had held that it was not "intended to take effect in possession or enjoyment at or after his death." That was first held in Reinecke v. Northern Trust Co., supra, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397, and again in May v. Heiner, supra, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244. Helvering v. Hallock, supra, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, did not touch this doctrine at all, and was aimed at something quite different. In addition to holding that in such cases a "vested" remainder was not "intended to take effect in possession or enjoyment," upon the termination of a life interest, the Court had also held that, if the remainder was "vested" though subject to be divested by some condition subsequent which the settlor's death determined, it was not within § 302(c); while, if it was merely "contingent" so as never to have "vested" at all until the settlor's death, it was within the section. It was this distinction, which involved the revenue in the verbal refinements of the common law in a subject which had for most purposes long since passed into Limbo, that Helvering v. Hallock, supra, 309 U.S. 106, 60 S. Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, abolished. It decided that, if the remainderman's right depended upon some event, determined at the settlor's death, the remainder was within § 302(c), no matter whether the common law would have regarded it as previously "vested" or "contingent"; and that was all that it did decide. Saunders's death ended the power of the trustee to invade the principal to make up his share of the income to the amount fixed in the deed. While he and his wife both lived, his share was $30,000; in case he survived her, it was $60,000; in case she survived him, as she did, her share was $60,000. The remainders were therefore relieved of a burden by his death; that relief was an "interest" which "took effect" at that moment by increasing the remainders pro tanto, and it was proper to include it in the estate under the doctrine of Helvering v. Hallock, supra, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368.

The interest of which the remainders were so relieved was in fact made up of two interests. First was the interest in successive invasions of the principal during the joint lives of the settlor and his wife, which might be needed to make up an in-

come of $30,000 to him; second was a similar interest in successive invasions of the principal during his survivorship of his wife, which might be needed to make up an income of $60,000 to him. The sum of these two interests is obviously less than an interest in successive invasions during his life, which might be needed to make up an income of $60,000 to him; and, as the plaintiff does not ask us to compute the interest as less than this—should we hold Helvering v. Hallock, supra, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, applicable at all—we shall dispose of the case as though the "interest" to be "included" in the estate was the present value on January 26, 1933, of the successive invasions of the principal during his life which might be needed to make up an income of $60,000 to him. The defendant argues that, not only does the doctrine in Helvering v. Hallock, supra, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, apply, but that the whole remainder was made dependent upon Saunders's death, and that the whole fund should therefore have been included in his estate. That would be so, however, only in case the devolution of the whole fund remained uncertain until that event; in so far as any part of it could not be taken to make up deficiencies in income, it was not so dependent. It is of course arguable that the part which might have been taken was so incalculable that it could not be even approximately computed, and that for this reason the plaintiff failed to prove its case. But if we assume that the sum of all the future possible invasions could be adequately forecast, that sum was necessarily the measure of any interest which Saunders's death "affected," and of what should have been included in his estate.

■■ It remains therefore only to consider whether it was possible adequately to appraise the possible future invasions. These, at any moment before Saunders's actual death, depended upon two factors, both then indeterminable: (1) the length of time that he would in fact live; and (2) the income from the trust fund meanwhile. True, the plaintiff, as taxpayer, had the burden of proof upon both these issues, and, if the income entirely failed, and if Saunders had lived 20 years, the whole fund would have been needed to make up an income of $60,000 to him. Both of these assumptions are, practically speaking, incredible: a man of 84 does not live to be 104; and a trust fund made up of such securities

does produce some income. It is no answer to say that both are theoretically conceivable; so are all sorts of fantastic possibilities which we reject when dealing with human affairs. When compelled to take present action based upon forecasts of a man's life, courts have for long been accustomed to use mortality tables; for, although logicians may say that probability never tells us anything about a given instance, in fact we never make a decision, or take a step, except in reliance upon it; and it so happens that in this particular matter the probability has been refined by averaging an enormous number of instances. The mortality tables should therefore have been used to fix this one of the two missing factors. Commissioner v. Marshall, 2 Cir., 125 F.2d 943, 141 A.L.R. 445; Meierhoff v. Higgins, 2 Cir., 129 F.2d 1002.

■ It is true that there is no such accredited standard of reference to guide a forecast of the income of the trust fund during the period of Saunders's "expectancy"; but we should not demand certainty; better a fair guess than the one answer sure to be wrong. Cohan v. Commissioner, 2 Cir., 39 F.2d 540, 543, 544; Underwood v. Commissioner, 4 Cir., 56 F.2d 67, 73; Sioux City Stock Yards Co. v. Commissioner, 8 Cir., 59 F.2d 944, 950; Davison v. Commissioner, 2 Cir., 60 F.2d 50, 52; Schmidlapp v. Commissioner, 2 Cir., 96 F. 2d 680, 681, 118 A.L.R. 297; United States v. Schenck, 2 Cir., 126 F.2d 702, 707; Rugel v. Commissioner, 8 Cir., 127 F.2d 393, 395. The securities in the fund were known in detail; their earning power in the past could easily have been ascertained; an expert estimate would be competent, especially as the forecast was for only three years. It was possible to make a fairly grounded conclusion upon a trial as to at least the maximum invasions that would have been necessary, taking any doubts against the taxpayer; and the case was therefore not proper for summary disposition.

The defendant argues that our conclusion is contrary to the decision of the Third Circuit in Blunt v. Kelly, supra, 131 Fed.2d 632. On the facts it is, if there is no difference between the power granted to the trustee in Saunders's will and that granted in the will there at bar, under which the trustees might "use such portion of the principal of the trust fund as may seem proper for the support, care and benefit" of the settlor. We are not sure that that language was equivalent to the clause, held

definite enough in Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; "benefit" is a word, even in such a context, that gave extremely wide latitude to the trustees. Be that as it may, the factors which determined that allowance were much more uncertain than either of the two which control here; and the decision would have been by no means on all fours with the case at bar, even if it had turned upon the impossibility of making any dependable appraisal of the interest to be included. But the court does not seem to have considered whether—if Helvering v. Hallock, supra, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, applied to the situation—it was necessary to appraise the interest at less than the whole principal of the fund. If the taxpayer urged that point, at least the court did not mention it; it was concerned only with the fact that one of the trustees was a remainderman, and that the discretion had been given to them and not retained by the settlor; and we have no reason to assume that upon the question of the appraisal the court would have differed from us.

Judgment reversed; cause remanded for a trial in accordance with the foregoing.