## BANKERS TRUST CO. v. HIGGINS.

District Court, S. D. New York.
Jan. 24, 1946.

White & Case, of New York City, for plaintiff.

John F. X. McGohey, U. S. Atty., of New York City, for defendant.

SYMES, District Judge.

This is an action by Bankers Trust Company of New York, administrator c.t.a. of the estate of Emmett Saunders, against Higgins, Collector of Internal Revenue.

August 15, 1923 Emmett A. Saunders, then 74 years old, and his wife Louise M. Saunders, transferred to the Bankers Trust Company, a New York Corporation, by an indenture of trust—copy of which is annexed to the amended complaint Ex. A— as trustee for the purposes therein set forth, certain assets consisting of stocks

and bonds and other securities of the value at the time of decedent's death,. of $1,316,-380.07.

On January 26, 1933, the said Emmett A. Saunders died a resident of the city, county and state of New York at the age of 84 years. Louise M. Saunders qualified as executrix and plaintiff as administrator c.t.a. of the estate of said Emmett A. Saunders. Louise M. Saunders died November 11, 1938.

According to said trust the trustee was to pay the income therefrom in equal portions to decedent and his wife for their lives, then to the survivor for life, and then to distribute the corpus to certain named beneficiaries. Paragraph first of the indenture provided: "* * * in case the income shall in any year during the lives of both of them or of the life of the survivor of them be less than Sixty thousand ($60,000.) Dollars, then and in that case an amount shall be taken from the principal of this trust which added to the income thereof will make sixty thousand ($60,000.) Dollars, and this Sixty thousand ($60,000) Dollars, less the commission of the trustee, shall be paid to them or to the survivor of them".

During the period from the creation of the trust on August 15, 1923 to January 26, 1933, the earnings of the trust in each year exceeded $60,000, so that no invasion of the corpus was necessary. January 25, 1934 the executors filed a Federal estate tax return and did not include the value of the trust corpus therein.

The total value of the estate at death of settlor—$1,316,386.07—was not included by the Commissioner of Internal Revenue as part of the estate of said Emmett A. Saunders, but was reduced by the sum of $170,-554.15, $96,934.60 of which represented his wife's contribution to the corpus of the trust, and $73,619.55 represented the value of the life estate of his wife in one-half of the corpus of the trust fund. The actual amount included in the gross estate of the settlor by the Commissioner on account of this trust was $1,145,831.92. The Commissioner determined that this amount was subject to tax under § 302(c) of the Revenue Act of 1926, as amended, 26 U.S.C.A. Int.Rev.Code, § 811(c).

As a result of the inclusion of the trust the estate paid a deficiency assessment of $126,516.47, plus interest, making a total payment of $140,306.76, and thereafter filed a claim for refund for the said amount, plus interest, which was rejected by the Commissioner of Internal Revenue. Plaintiff thereupon brought this action.

The amended complaint alleges in substance that the deficiency resulted from the determination of the Commissioner that to the extent of $1,145,831.92 the corpus of the trust in question should be included in the decedent's estate, pursuant to § 302(c) of the Revenue Act of 1926, as amended by the joint resolution of March 3, 1931, and § 803(a) of the Revenue Act of 1932. That the provisions are inapplicable to the trust in question, and that an overpayment of $140,306.76 was erroneously and illegally assessed or collected.

Thereafter the defendant moved for summary judgment on the ground that the transfer comes within the provisions of § 302(c) of the Revenue Act of 1926, being a transfer made to take effect in possession or enjoyment at or after death. The issue of contemplation of death was not raised in that motion or in the subsequent appeal.

Defendant's motion came on to be heard and the complaint was dismissed. On appeal the Court of Appeals reversed and remanded the cause for trial. 2 Cir., 136 F.2d 477. The court stated (136 F.2d at page 478) that Saunders' death "ended the power of the trustee to invade the principal to make up his share of the income to the amount fixed in the deed. * * * The remainders were therefore relieved of a burden by his death; that relief was an 'interest' which 'took effect' at that moment by increasing the remainders pro tanto, and it was proper to include it in the estate under the doctrine of Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368."

The court also decided that the full value of the corpus was not affected by the decedent's death. That the interest to be included in the estate was the present value as of January 26th of the successive invasions of principal during his life, which might be needed to make up the $60,000 an-

nual payment to him. That the sum of all possible future invasions could be adequately forecast by determining the length of time the decedent would live, and the income from the trust fund in the meantime. That the first of these factors could be fixed by the use of mortality tables, and the second by expert testimony, and therefore the case was not one for summary disposition, and remanded it for trial.

The parties, in conformity with the decision of the Court of Appeals, stipulated that the life expectancy of the decedent at the time of his death was 3.63 years, and the prospective annual income during this expectancy was $52,655.44, which would require a prospective annual invasion of principal of $7,344.56. Further, even if the income of the trust fell below $60,000, it did not render the entire trust includable in the gross estate under the Hallock case. That the amount to be included in the estate "was the present value on January 26, 1933, of the successive invasions of the principal during the decedent's life, which might be needed to make up an income of $60,000 to him".

 Were this and the stipulation all, the decision by the District Court is clearly indicated. The Government, however, now urges the decision of the Circuit Court of Appeals has been overruled by implication, at least, in subsequent decisions of the Supreme Court, to wit, Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 65 S.Ct. 108, 89 L.Ed. 783, 159 A.L.R. 227; Commissioner v. Field, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 786, 159 A.L.R. 230. But be that as it may, the decision of the Circuit Court of Appeals is the law of the case. However, it is the judgment of counsel for both sides that the court should pass upon the question of contemplation of death.

Sec. 302(c) of the Revenue Act of 1926 furnishes two bases for taxation. The first renders a transfer taxable if made to take effect in possession or enjoyment at or after death. It is clear from the record that the Commissioner of Internal Revenue did not determine that the trust was created in contemplation of death, and the Government did not plead affirmatively that the

trust was so made. According to the record, however, the District Court held on an interlocutory motion argued sometime ago that the Government was privileged to raise such an issue under the pleadings in their present form, and that ruling is final as far as we are now concerned.

Nor was this question before the Circuit Court of Appeals on the motion for summary judgment, nor is it mentioned in Judge Hand's opinion. The Government in the affidavit filed in support of the motion for summary judgment, specifically reserved this question. So we take up that issue upon its merits.

In our case the decedent retained the income from this trust for the period of his life, subject to his wife's right to receive one-half thereof during their lives. At the time the trust was created in 1923 there was no reason to believe that it could avoid the estate tax. However, in May et al., Executors, v. Heiner, April 14, 1930, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244, Pauline, the wife of one May, transferred to her husband and others, as trustees, certain described securities in trust to collect the income, and after paying all taxes, etc., to pay the balance to Barney May during his lifetime, and after his decease to said Pauline during her lifetime, and after her decease all the property in said trust, in whatever form or shape it may be, shall be distributed equally among her four children. Mrs. May died in March, 1920, and the Commissioner demanded her executors pay additional taxes based upon the value of the property held under the above-mentioned trust instrument. The executors paid the required sum, and a demand for refund being denied, began the action.

The Commissioner stated that the principal of the trust could not take effect in possession until the death of the decedent, and according to its terms, if the husband died before her the income was to be paid to her until her death. The gift of the principal, therefore, could not take effect during the decedent's life. The Supreme Court held, however (281 U.S. at page 243, 50 S.Ct. at page 287, 74 L.Ed. 826, 67 A.L.R. 1244): "The transfer of October 1, 1917, was not made in contempla-

tion of death within the legal significance of those words. It was not testamentary in character and was beyond recall by the decedent. At the death of Mrs. May no interest in the property held under the trust deed passed from her to the living; title thereto had been definitely fixed by the trust deed. The interest therein which she possessed immediately prior to her death was obliterated by that event."

The opinion (281 U.S. at page 244, 50 S.Ct. at page 287, 74 L.Ed. 826, 67 A.L.R. 1244), cites Reinecke. v. Northern Trust Co., 278 U.S. 339, at pages 347, 348, 49 S.Ct. 123, at pages 125, 126, 73 L.Ed. 410, 66 A.L.R. 397, where the Court said: "In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest which is transferred. * * * One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax, but we are asked to say that this statute means that he may not make a gift inter vivos, equally absolute and complete, without subjecting it to a tax if the gift takes the form of a life estate in one with remainder over to another at or after the donor's death. It would require plain and compelling language to justify so incongruous a result and we think it is wanting in the present statute. * * *"

In effect the Circuit Court of Appeals, 32 F.2d 1017, was reversed for the reason that the statute imposes an excise tax upon the transfer of an estate upon the death of the owner.

In the very latest expression by the Supreme Court, City Bank Farmers Trust Co., Administrator, v. McGowan, Collector of Internal Revenue, 323 U.S. 594, at page 599, 65 S.Ct. 496, at page 498, 89 L. Ed. 483, the Court said, in discussing the presumption arising from the Commissioner's determination that the transfers were made in contemplation of death: "The applicable test is that stated in United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867. This is whether the thought of death is the impelling cause of the transfer."

In the Wells case, 283 U.S. 102, at page 113, 51 S.Ct. 446, at page 450, 75 L.Ed. 867, the Supreme Court said: " 'The presumption created by the statute that the transfers in question were made in contemplation of death cannot stand against ascertained and proven facts showing the contrary to be true. The best evidence of the state of decedent's health at the time the transfers were made is the statement of his doctor. The best evidence of the decedent's state of mind at that time and the reasons actuating him in making the transfers are the statements and expressions of the decedent himself, supported as such statements are by all the circumstances concerning the transfers.' "

And, 283 U.S. at page 115, 51 S.Ct. at page 450, 75 L.Ed. 867: "The phrase 'in contemplation of death', * * * was first used by the Congress in the Revenue Act of 1916, imposing an estate tax. * * * The provision was continued in the Revenue Act of 1918 * * * and in later legislation."

Including the Act of 1926, which governs the case at bar. The Supreme Court continues (283 U.S. at page 115, 51 S.Ct. at page 451, 75 L.Ed. 867): "It is recognized that the reference is not to the general expectation of death which all entertain. It must be a particular concern, giving rise to a definite motive. The provision is not confined to gifts causa mortis, which are made in anticipation of impending death, are revocable, and are defeated if the donor survives the apprehended peril."

And, 283 U.S. at page 116, 51 S.Ct. at page 451, 75 L.Ed. 867: "Transfers in contemplation of death are included within the same category, for the purpose of taxation, with transfers intended to take effect at or after the death of the transferor. The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax."

283 U.S. at page 117, 51 S.Ct. at page 451, 75 L.Ed. 867: "Death must be 'contemplated,' that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition."

In fact the opinion is full of applicable expressions and must be read in full to get the complete meaning of the rule applicable to our case.

Another late authority in the Supreme Court is Colorado National Bank of Denver v. Commissioner, 305 U.S. 23, 59 S.Ct. 48, 83 L.Ed. 20, where the decedent—a man 80 years of age—created a trust, the income to be accumulated during his life and then payable to his family. The motive was to protect his family from speculation which he intended to engage in. He died five years after the creation of the trust. The Supreme Court reversing the Circuit Court of Appeals held the trust was not made in contemplation of death, and quoted from its opinion in the Wells case, supra, stating, 305 U.S. at page 27, 59 S.Ct. at page 49, 83 L.Ed. 20: "We adhere to what was there said. The mere purpose to make provision for children after a donor's death is not enough conclusively to establish that action to that end was 'in contemplation of death.'"

This is the latest expression of the Supreme Court, with the exception of the City Bank Farmers Trust Co. case, supra.

Turning now to the facts of the case at bar, to which this rule is to be applied, it appears:

The decedent Saunders was 74 years of age when he created the trust and lived for more than nine years thereafter. He was in good health in 1923, and up to a very short time before his death. Harry H. Martin, vice-president of the Bankers Trust Company, and connected as a trust officer with that company since 1907, testified he first met Emmett A. Saunders in 1919 or 1920, and is familiar with the circumstances of the execution of the deed of trust here involved, and administered the same up to the time of Mrs. Saunders' death in 1937 or 1938. Mr. Saunders called upon him in connection with one of his trusts. The Bankers Trust Company was trustee for three trusts that Saunders had created in 1918, which Saunders often discussed with him.

At that time (1920) Saunders, according to the witness, was of a forcible and impressive type. He would guess his age at the time to be 60. He was living in New York part of the time and part time in South Bend, Indiana. His business was the Mishawaka Woolen Company—the largest manufacturer of rubber boots and overshoes in the country—of which he was president and the chief and most active executive.

In 1921 they had discussions with reference to some investments he had made, Saunders stating he had been successful in making money, but had not done a good job at investing, having left it to others, who had put him in a lot of situations that did not turn out well and cost him money. That he thought he would create a trust and give us [the trust company] management of part of what he still had at that time which he did. That he was satisfied with the job they had done in respect to the other trusts, and he said he had some more securities and there were situations which he felt it was impossible for him to deal with himself. That their judgment would be better than his, due to his lack of time and inexperience in investments.

They did not discuss the possible avoidance of estate taxes, but did discuss the avoidance of income tax.

Saunders at that time appeared to be a well man, in full possession of his faculties, and made no reference to his health. After the creation of the trust he saw him frequently. Often called upon him at his apartments in the Plaza Hotel. They discussed whether the creation of this trust would have any effect on income taxes. Told him that in their opinion there would be some saving in income tax. Mr. Saunders was very emphatic that he had done poorly himself in investments and wanted to turn over the management to the trust company. He gave no other reason for wanting to create the trust. Saw Saunders within a month of his death. Health not discussed, nor did he know of any serious illness he had had, but wanted to be released from the responsibility of management, not being confident of his own investment ability.

Next the plaintiff offered the deposition of Dr. Taylor, personal physician of Mr. Saunders. The Government made

the general objection that the deposition is not material or competent, since the vital date of the case is August 15, 1923 and before, while Dr. Taylor did not see Mr. Saunders until February, 1925. This objection is not good. In Wigmore on Evidence, 2d Ed., Vol. 1, § 222, p. 470, the author says: "Experience teaches us that corporal appearances are approximately an index to the age of their bearer, particularly for the marked extremes of old age and youth. In every case such evidence should be accepted and weighed for what it may be in each case worth".

And § 223: "Corporal appearances and conduct as indications of the inward health or lack of it are relevant".

And § 225: "In showing the existence at a given time of any physical condition (skill, strength, health, or the like), the existence of such condition at a prior or subsequent time (being one of the classes of evidence noted ante, § 190) is evidential. The limits of time over which such evidence may range must depend on the circumstances of each case as to the probability of intervening changes, and should be left entirely within the discretion of the trial judge".

It would therefore seem that Dr. Taylor's testimony as to Mr. Saunders' condition on and previous to August 15, 1923 is competent, and the objection should be overruled.

After being duly qualified as a physician of long practice in internal medicine, Dr. Taylor said he first saw the decedent in February, 1925, when he had an attack of shingles—a painful skin infection. At that time his general physical condition was entirely sound, being an elderly gentleman, well nourished and in good condition, with no abnormality or organic disorder of heart or lungs, etc. That the shingles continued for some time as is usual with that disease, with acute neuritic pains. That the disease is not progressive, has no effect on the general health, except for a great deal of distress and discomfort. At the time Saunders complained of irritation of the bladder and difficulty in urinating, but there were no casts or evidence of kidney damage. That his mental attitude was calm and steady, having many normal interests, etc. Did not seem to have any worry at the time.

He made a complete physical examination of him in 1930. His weight was stationary, heart, lungs, blood pressure and pulse normal and regular. Discovered a somewhat enlarged left kidney, which X-rays showed had a stone. He referred him to Dr. Budby, a urologist, who later in 1932 reported an increase in the size of the stone and advised an operation. In his certificate of death Dr. Taylor gave the cause as uremic poisoning, which was the terminal thing. That Mr. Saunders was 75 years of age in 1925, but at that time did not have the appearance of a man of that age. That Saunders stated he thought the kidney stone had been there for 50 years. He found no indications of indulgence in alcohol nor a depressed mental attitude.

[5] This record persuades me—sitting as a trier of the fact—that the plaintiff at bar has sustained the statutory burden of showing the transfer was not made in contemplation of death. The weight of the evidence is that the decedent desired to transfer the securities in question to a trust company, so that the care and reinvestment of the same might be in more competent and experienced hands than his own. Decedent lived nine years after the transfer, was in good health at the time he executed the trust, and the active executive of a large business concern, and this particular transfer was only one of several the decedent had created for the same reason.

The record also discloses that in 1923 he was at the very height of his business activity, and that in 1925, two years after the trust was created, his ten-year contract as president and chief executive of the Mishawauka Rubber & Woolen Company was renewed for another ten years. He was not a stockholder in this concern, therefore his employment was purely an arms-length transaction with the U. S. Rubber Company—the parent corporation—based upon his ability to do a job.

In First Trust & Deposit Co. v. Shaughnessy, 2 Cir., 134 F.2d 940, cited by the defendant, the facts were somewhat simi-

lar. Judge Hand said that executors who paid the tax and were suing to recover the alleged excess tax as not due must bring forward some evidence that decedent Ballard did not make, the gift in contemplation of death, and must carry the burden of proof on that issue. It appears that later Ballard became concerned as to whether the reservation as to changing the beneficiary might not subject the policies to an estate tax, and he consulted his lawyer in regard to that matter. The latter advised him there was a chance that this might be so, and for this reason Ballard put an end to the trust, resumed ownership of the policies and transferred them to his wife, who in turn transferred to a trustee.

The court held the case within the doctrine of the Wells case, i. e., that a gift dictated by two motives—one a desire to dispose of the property after the donor's death, the other to dispose of it before. That case held that in such a situation inclusion of the property within the donor's testamentary estate depends upon which of the two motives preponderates. The case was apparently decided in favor of the defendant collector, because of the testimony (supra) that Ballard's single purpose in changing his trust was to avoid the estate tax.

Another case cited by the Government—Farmers' Loan & Trust Co. v. Bowers, 2 Cir., 98 F.2d 794, 796—involved an action brought by the Farmers' Loan & Trust Co., trustee under a trust of William Waldorf Astor. From a judgment in favor of the Government the plaintiff appealed. The question discussed on appeal was the court's instructions to the jury. The principal defense made by the Government was that the avoidance of income taxes and estate taxes actuated the creation of the trusts. In dealing with these matters the trial judge told the jury that if they concluded " * * * from all the evidence in the case that there were several motives for the transfers—one being to avoid the estate tax, another being to avoid or reduce income tax, and still another being to escape a possible capital levy by the British Government, and if you are of the belief that the motive of avoiding the estate tax played a substantial part in causing Astor to make the transfers, the transfers must be held to have been made in contemplation of death, and your verdict should be for the defendant."

The court, referring to the Wells case, supra, went on to say that the words "in contemplation of death" mean that the thought of death is the impelling cause of the transfer, and that transfers related to purposes associated with life, rather than with the distribution of property in anticipation of death, may be made either to relieve the donor of cares of management or to recognize special needs or exigencies, or discharge moral obligations. And, 98 F.2d at page 798: " 'The gratification of such desires may be a more compelling motive than any thought of death.' "

Another case, Land Title & Trust Co. v. McCaughn, D.C., 7 F.Supp. 742, 744, was an executors' action to recover an inheritance tax. The indenture of trust in question was executed only a year and ten months before the decedent's death, and the question was, was it made in contemplation of death. Where property is transferred within two years trustees seeking to recover estate tax have burden to show motive was not testamentary, and to show affirmatively what motive was, and burden is not met if motive is disclosed which is as consistent with testamentary disposition as with gifts inter vivos; or two motives, one testamentary and the other not, are disclosed. The court said further that the age, physical condition and state of mind of the transferor are always important as throwing light on the motive, and the court held on a state of facts differing considerably from ours: " * * * that the decedent's desire to conserve his property for his children, that is, to dispose of it in such manner that it could not be dissipated by them after they came into possession of it, was a factor of importance in his decision to place his estate in trust."

It further appeared that the decedent had discussed inheritance taxes very often with his son, who stated that the father knew all about the tax situation and had the same in mind in making the disposition of his property that he did.

The court gave judgment for the defendant, as plaintiffs failed to show that the motive inducing the transfer was not the sort leading to testamentary disposition.

The cases cited by the defendant are clearly distinguishable from the case at bar, under the doctrine of Colorado National Bank v. Commissioner, 305 U.S. 23, 59 S.Ct. 48, 49, 83 L.Ed. 20, where in confirming the Wells case the court said: "The mere purpose to make provision for children after a donor's death is not enough conclusively to establish that action to that end was 'in contemplation of death.' Broadly speaking, thoughtful men habitually act with regard to ultimate death but something more than this is required in order to show that a conveyance comes within the ambit of the statute."

There is nothing in the record inconsistent with, and in fact everything supports the claim that Saunders' principal motive in creating the 1923 trust was to relieve himself of the responsibility of management of his own property. His experience with prior trusts convinced him of the advisability of this method of relieving himself from distasteful responsibilities in respect thereto.

After this opinion was finished counsel for the Government called my attention to Dominick's Estate v. Commissioner of Internal Revenue, 2 Cir., 152 F.2d 843, an appeal from a decision of the Tax Court determining a deficiency in an estate tax in the amount of $502,179.39. I have read the case carefully and feel it does not throw any light upon our question.

As already stated, the decision of the Court of Appeals is not only binding upon the trial court, but is the law of the case in the appellate court itself on a subsequent writ of error. Standard Sewing Mach. Co. v. Leslie, 7 Cir., 118 F. 557, 559. See also Roberts v. Cooper, 20 How. 467, 15 L.Ed. 969, where the Supreme Court said that on the second appeal the court can notice only errors occurring in, and peculiar to, the second trial.

For the reasons stated findings of fact, conclusions of law and judgment in favor of the plaintiff for the relief asked are herewith entered.