## HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* CITY BANK FARMERS TRUST CO., TRUSTEE.

No. 10.  Argued October 15, 1935.—Decided November 11, 1935.

*Mr. David E. Hudson,* with whom *Solicitor General Reed, Assistant Attorney General Wideman,* and *Mr. Sewall Key* were on the brief, for petitioner.

*Mr. Russell L. Bradford,* with whom *Messrs. Carl Taylor* and *George H. Craven* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The Revenue Act of 1926, § 302 (d),[1] provides:
" The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

.    .    .    .

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, . . ."

The questions for decision are whether the section requires inclusion in the gross estate of the value of the corpus of a trust established in 1930 where the creator reserved a power to revoke or modify, to be exercised jointly with a beneficiary and the trustee; and whether, if such value is to be included in the gross estate, the section offends the Fifth Amendment.

By a writing dated February 21, 1930, Gertrude Feldman James, a non-resident citizen, transferred securities to the respondent as trustee, the trust to last during the lives of her two daughters or the survivor of them. The

---

[1] C. 27, 44 Stat. 9, 70; U. S. C. App., Tit. 26, § 1094.

income was to be paid to her until her death, or until the termination of the trust, whichever should first occur. After her death, her husband surviving, the income was to be paid to him. If he did not outlive her, or upon his death, the income was to be distributed amongst their issue per stirpes. At the termination of the trust the corpus was to be delivered to the husband, if he were alive; if not, to the settlor, if living, or, if she were dead, to the beneficiaries at that time entitled to receive the income; if there were none such, to the heirs at law of the husband. The trust was irrevocable save that the settlor reserved the right to modify, alter or revoke it, in whole or in part, or to change any beneficial interest, any such revocation or alteration to be effected with the written consent of the trustee and her husband or, if the husband were dead, of the trustee and her husband's brother. If they could not agree the decision of the husband or of the brother, as the case might be, was to be final. Samuel James, the husband, survived the grantor, whose death occurred before the termination of the trust, and he is in receipt of the income.

The petitioner included the value of the corpus of the trust in Mrs. James' gross estate and determined a deficiency of tax. The Board of Tax Appeals reversed, holding that § 302(d) did not apply.[2] The Circuit Court of Appeals affirmed the Board's decision.[3] We granted the writ of certiorari because the decision below conflicts with that in another circuit.[4] We hold that the section covers this case and as so applied is valid.

The Circuit Court of Appeals thought our decision in *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, required the language of the Act to be construed as tantamount to

[2] 29 B. T. A. 1141.

[3] 74 F. (2d) 242.

[4] *Commissioner* v. *Strauss*, 77 F. (2d) 401.

" in conjunction with any person not a beneficiary." So limited it is inapplicable to the trust in question.[5]

The *Reinecke* case involved § 402 (c) of the Revenue Act of 1921 [6] (substantially § 302 (c) of the Revenue Act of 1926) which directed the inclusion in the gross estate of all property " To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death . . ." It was held that a gift beyond the power of the grantor to alter, amend or revoke could not be said to take effect in possession or enjoyment at or after his death. Conversely, one which he alone held the power to revoke or modify came within the section, since, at his death, substantial interests passed from his control and were for the first time confirmed in others. The case involved nothing more than a determination whether the transfers were complete when made. If they were the statute did not reach them. Here we have a different problem, for § 302 (d) of the 1926 Act on its face embraces Mrs. James' transfer, although complete when made and thereafter beyond her own unfettered control.

The respondent says that the section ought to be construed in the light of the analogous § 219 (g).[7] The latter, part of the income tax title, is " Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any

---

[5] Compare *White* v. *Poor*, 75 F. (2d) 35 (No. 36 of this term, *post*, p. 98), and *Helvering* v. *Helmholz*, 75 F. (2d) 245 (No. 14 of this term, *post*, p. 93); *Lit* v. *Commissioner*, 72 F. (2d) 551; *Commissioner* v. *Stevens*, 79 F. (2d) 490.

[6] C. 136, 42 Stat. 227.

[7] C. 27, 44 Stat. 9, 34; U. S. C. App., Tit. 26 § 960.

part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor." The two sections have a cognate purpose but they exhibit marked differences of substance. The one speaks of a power to be exercised with one not a beneficiary; the other of a power to be exercised with any person. The one refers to a power to revest the corpus in the donor; the other has no such limitation.[8] It is true, the Report of the Ways and Means Committee on § 302 (d) said "this provision is in accord with the principle of Section 219 (g) of the bill which taxes to the grantor the income of a revocable trust."[9] But to credit the assertion that the difference in phraseology is without significance and in both sections Congress meant to express the same thought, would be to disregard the clear intent of the phrase "any person" employed in § 302 (d). We are not at liberty to construe language so plain as to need no construction,[10] or to refer to Committee reports where there can be no doubt of the meaning of the words used.[11] The section applies to this transfer.

We are next told that if the Act means what it says it taxes a transfer as one taking effect at death though made prior to death and complete when made; that to do this is arbitrary and deprives the taxpayer of property without due process.

The section was first introduced into the Revenue Act of 1924, and reënacted in that of 1926. Mrs. James created her trust in 1930. She was, therefore, upon notice of the law's command, and there can be no claim that the statute is retroactive in its application to her transfer.

[8] Compare *Porter* v. *Commissioner*, 288 U. S. 436.

[9] H. R. No. 179, 68th Cong., 1st Sess., p. 28.

[10] *Hamilton* v. *Rathbone*, 175 U. S. 414, 419; *Thompson* v. *United States*, 246 U. S. 547, 551.

[11] *Wilbur* v. *Vindicator Gold Mining Co.*, 284 U. S. 231, 237.

The inquiry is whether it is arbitrary and unreasonable to prescribe for the future that, as respects the estate tax, a transfer, complete when made, shall be deemed complete only at the transferor's death, if he reserves power to revoke or alter exercisable jointly with another.

The respondent insists that a power to recall an absolute and complete gift only with the consent of the donee is in truth no power at all; that in such case the so-called exercise of the power is equivalent to a new gift from the donee to the donor. And so it is claimed that the statute arbitrarily declares that to exist which in fact and law is nonexistent. The position is untenable. The purpose of Congress in adding clause (d) to the section as it stood in an earlier act was to prevent avoidance of the tax by the device of joining with the grantor in the exercise of the power of revocation someone who he believed would comply with his wishes. Congress may well have thought that a beneficiary who was of the grantor's immediate family might be amenable to persuasion or be induced to consent to a revocation in consideration of other expected benefits from the grantor's estate. Congress may adopt a measure reasonably calculated to prevent avoidance of a tax. The test of validity in respect of due process of law is whether the means adopted are appropriate to the end. A legislative declaration that a status of the taxpayer's creation shall, in the application of the tax, be deemed the equivalent of another status falling normally within the scope of the taxing power, if reasonably requisite to prevent evasion, does not take property without due process. But if the means are unnecessary or inappropriate to the proposed end, are unreasonably harsh or oppressive, when viewed in the light of the expected benefit, or arbitrarily ignore recognized rights to enjoy or to convey individual property, the guarantee of due process is infringed.

Illustrations are not lacking of cases falling on either side of the line.

Congress may require that property transferred in contemplation of death, although the transfer is so remote in time as not to comply with the requirements of a gift *causa mortis,* shall nevertheless be treated as part of the estate for purposes of taxation: this for the prevention of evasion and the giving of practical effect to the exercise of admitted power.[12] This is true despite the fact that the statutory prescription embraces gifts *inter vivos* which are in fact fully executed, irrevocable and cannot be defeated.[13]

Although property received by gift from another is capital in the hands of the donee, the gain upon a sale may be measured by the cost to the donor rather than the value at the time of acquisition by the donee.[14]

It is competent for Congress, in order to avoid the evasion of tax, to declare that when one has placed his property in trust subject to a right of revocation in himself and another who is not the beneficiary he shall, nevertheless, be deemed to control the property in such sense that the income therefrom shall be treated as his income for the levying of a tax.[15] So also where an irrevocable trust is established to pay for insurance on the settlor's life, to collect the policy upon his death, and to hold or apply the proceeds for the benefit of his dependents, Congress may declare the income of the trust fund taxable to the settlor as part of his own income.[16]

In the instances cited the power to levy an excise upon the testamentary transfers or to tax income was conceded.

---

[12] *Nichols* v. *Coolidge,* 274 U. S. 531, 542; *Milliken* v. *United States,* 283 U. S. 15, 20; *United States* v. *Wells,* 283 U. S. 102, 116.

[13] *United States* v. *Wells, supra.*

[14] *Taft* v. *Bowers,* 278 U. S. 470, 483.

[15] *Reinecke* v. *Smith,* 289 U. S. 172, 177.

[16] *Burnet* v. *Wells,* 289 U. S. 670.

To effectuate the exercise of this admitted power and to prevent evasion Congress was held to have acted reasonably in including within the sweep of the statute a status or an act not normally within its reach.

There are, however, limits to the power of Congress to create a fictitious status under the guise of supposed necessity. Thus it has been held that an act creating a conclusive presumption that a gift made within two years prior to death was made by the donor in contemplation of death, and requiring the value of the gift to be included in computing the estate of the decedent subject to transfer tax, is so grossly unreasonable as to violate the due process clause of the Fifth Amendment.[17] In the same category falls a statute seeking to tax the separate income of a wife as income of her husband.[18]

In view of the evident purpose of Congress we find nothing unreasonable or arbitrary in the provisions of § 302 (d) of the Revenue Act of 1926 as applied in the circumstances of this case. It was appropriate for Congress to prescribe that if, subsequently to the passage of that Act, the creator of a trust estate saw fit to reserve to himself jointly with any other person the power of revocation or alteration, the transaction should be deemed to be testamentary in character, that is, treated for the purposes of the law as intended to take effect in possession or enjoyment at the death of the settlor.

The judgment is

*Reversed.*

MR. JUSTICE VAN DEVANTER, MR. JUSTICE MCREYNOLDS, MR. JUSTICE SUTHERLAND and MR. JUSTICE BUTLER are of opinion that the judgment should be affirmed.

---

[17] *Heiner* v. *Donnan,* 285 U. S. 312. Compare *Schlesinger* v. *Wisconsin,* 270 U. S. 230.

[18] *Hoeper* v. *Tax Commission,* 284 U. S. 206.