**TRUST CO. OF GEORGIA et al. v. ALLEN,**
Collector of Internal Revenue.
Civil Action No. 227.

District Court, M. D. Georgia,
Macon Division.

May 10, 1944.

Spalding, Sibley & Troutman, of Atlanta, Ga. (Hughes Spalding, John A. Sibley, and Furman Smith, all of Atlanta, Ga., of counsel), for plaintiffs.

Mills Kitchin, Sp. Asst. to Atty. Gen., Tax Division, and T. Hoyt Davis, U. S. Atty., and Chas. W. Walker, Asst. U. S. Atty., both of Macon, Ga., for defendant.

DEAVER, District Judge.

Mr. Jack J. Spalding was born in 1856 and died in 1938. In 1925 he executed two trusts for the benefit of two of his children in the sum of $50,000 each, reserving the power, with the unanimous consent of the trustee, the life beneficiary and himself, to amend, change, enlarge or limit, but in no event to revoke the terms of the agreement. In 1934, he enlarged the trusts by adding to each the sum of $50,000.

He made these gifts to meet the needs of his children and grandchildren. The gifts were put in trust because of past experience in handling prior gifts and to protect the donees against their own business misadventures and not to retain any benefit to himself. He had a third child to whom he made gifts in similar amounts, following the policy of making gifts to his three children upon the principle of equality.

Donor was a successful attorney and capable business man. At the time of these gifts, he intended them to be complete and absolute and believed that they were so and that the trust property passed absolutely out of him for all purposes, including estate taxes. His interpretation of the law as then construed justified that belief. He returned and paid gift taxes on the full value of the property.

In 1937, upon being advised for the first time that under the case of Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62, the gifts remained a part of his estate for estate tax purposes, he released the power reserved in the trust instruments. After 1934 he made no other substantial gifts to his children, although at his death he was worth approximately one million dollars, but did from 1921 until his death give to the church and educational and charitable institutions fully as much as the combined gifts to all his children during his lifetime.

At the time the trusts were executed and the power released, he was in average good health for a man of his age.

In making the release he was actuated by the thought of death only to the extent that thoughtful men habitually act with regard to ultimate death and, in 1925, 1934, and 1937, he did not entertain thoughts of

death except the general expectation of death that all entertain. He was motivated in making the gifts by the desire to meet the needs of his children and to set aside property for the benefit of them and their families, freed from all claims, tax or otherwise, and he made the release of the power to effect his original purpose in executing the trusts and to take the property out of his estate as he thought he had already done. Neither the execution of the trusts nor the release of the power was done in contemplation of death except in the sense that all men expect to die at some time.

The question in this case is whether the release of the power was made "in contemplation of death".

■ Congress has provided for gift taxes and estate taxes. Ordinarily, an estate is thought of as the property actually left by the owner at his death. However, in order to prevent evasion of the estate tax, Congress has, for estate tax purposes, defined estate as including a gift made "in contemplation of death". 26 U.S.C.A.Int. Rev.Code, § 811. The statute is just a rule by which to separate property which in substance is a part of an estate from that which is not. Under that rule, if a gift in form is in reality a part of an estate, it so remains, notwithstanding the transfer. It is not the transfer which makes the property estate property but it must be estate property in substance before the transfer can be disregarded. The property is classified as estate property or not according to the facts existing at the time of transfer and not by any desire to avoid taxes. The ultimate fact which results in retaining a complete gift in the estate is a special concern about approaching death. A desire to avoid taxes has no legal effect and it has no probative value even as evidence of special concern about death, because in any transfer such a desire exists equally whether the thought of death is special or general. If a special concern about death exists, then a desire to avoid taxes becomes the motive for electing to transfer by gift instead of by will. At that point the statute applies and declares such a transfer to be in effect a gift after death. However, it still remains true that the special concern about death must exist before the statute is operative. The motive to dispose of property before death and the motive to dispose of it after death, which motives are controlling, must not be confused with a motive to adopt one form of transfer instead of another, which motive may itself arise from a desire to avoid taxes. If the natural, human desire to retain property is overcome by the recognition of approaching death, the motive is one to dispose of property after death, but, if the desire to retain property is overcome by a desire that others have the benefit of it before death and regardless of when the donor should die, the motive is one to dispose of property before death. A desire to avoid taxes may be present in either case but does not affect the result. It simply explains why donor, in attempting to dispose of property after death, put the transfer in the form of a gift.

■ A gift in contemplation of death is one which, in substance, though not in form, approximates a transmission of property from the dead to the living and which effects, for practical purposes, nearly the same result and, therefore, serves as a substitute for a testamentary disposition. Such a gift falls within the same classification as a transfer intended to take effect at or after the death of the transferor. The effect of the gift must be, in substance, approximately the same as if the property had been transmitted by will, and the motive of the donor must have been such as would have induced him to dispose of the property by will.

The Government contends that a transfer made for the purpose of avoiding the tax is necessarily made in contemplation of death and cites the following Regulation: "A transfer is prompted by the thought of death if it is made with the purpose of avoiding the tax, or as a substitute for a testamentary disposition of the property or for any other motive associated with death". That Regulation is broad enough to include the general expectation of death and is, therefore, in partial conflict with the case of United States v. Wells, 283 U.S. 102, 115, 51 S.Ct. 446, 451, 75 L.Ed. 867, which holds that the words "'in contemplation of death' do not refer to the general expectation of death which all persons entertain."

■ According to that decision, if a donor has no expectation of death, except in that general sense, a gift by him would not be made "in contemplation of death" in the statutory sense. A young man in perfect health, who anticipates that he will live out his normal expectancy, could not be

said to have contemplated death, in that limited sense, in making a gift, though he made it to avoid estate taxes. A donor may contemplate death in the general sense and in that state of mind give away property to avoid estate taxes.

The Wells case says that the determining factor must be found in the transferor's motive and that the question necessarily is as to the state of mind of the donor. "Motive," as used in that case, does not refer to "intention" of the donor to avoid taxes. It refers to an intention or purpose to make in some other manner what amounts, in substance and effect, to a testamentary disposition. That intention, moreover, must grow out of the thought of death in some other sense than that the donor, like all other men, expects some time to die. The Wells case says, "Death must be 'contemplated,' that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition." The motive for making a will grows out of the testator's desire that certain persons have the benefit of his property after his death. A will is made in contemplation of death, without regard to whether death is thought to be imminent or remote. In either event, the testator retains possession and control of his property during his life. A gift deprives the donor of the possession, control and benefit of the property. The tax statute as to gifts refers to the same sort of motive as leads to the making of a will, that is, a desire that donee have the benefit of the property after donor's death, but that motive is limited by statute and must arise from an expectation of death for reasons other than the fact that death at some time is inevitable.

The donor, desiring that certain persons shall have the benefit of his property after his death, must, for that reason, devise some form of gift which will have substantially the same effect as a will. In other words, he must for some reason consider that his death, while not imminent, will occur within a time short enough to make the transfer of the use and control of the property for that period comparatively unimportant. In such a case the donor, in practical effect, makes a will, but puts it in the form of a gift so as to accomplish substantially the same result without subjecting his estate to the estate tax. United States v. Wells, 283 U.S. 102, 117, 51 S. Ct. 446, 75 L.Ed. 867; Igleheart v. Commissioner, 5 Cir., 77 F.2d 704, 709.

In Commissioner v. Wilder's Estate, 5 Cir., 118 F.2d 281, 282, the court said:

"The taxability of a transfer is not to be determined by the refinements of conveyances or the technicalities of contracts, but by comparing the substance and practical effect of what was done with the standards set up by the taxing act. Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368. This Act aims to tax the transfer of a decedent's estate at his death, and to include in his estate the value of all property which by previous transfers has been so arranged as to pass to others at his death otherwise than through his personal representatives, when he retains it substantially or beneficially until his death."

In Milliken v. United States, 283 U.S. 15, 23, 51 S.Ct. 324, 327, 75 L.Ed. 809, the court quoted a regulation, as follows:

"The words 'in contemplation of death' do not refer to the general expectation of death which all persons entertain. A transfer, however, is made in contemplation of death wherever the person making it is influenced to do so by such an expectation of death, arising from bodily or mental conditions, as prompts persons to dispose of their property to those whom they deem proper objects of their bounty."

The court then said:

"It is sufficient for present purposes that such gifts are motivated by the same considerations as lead to testamentary dispositions of property, and made as substitutes for such dispositions without awaiting death, when transfers by will or inheritance become effective. Underlying the present statute is the policy of taxing such gifts equally with testamentary dispositions, for which they may be substituted, and the prevention of the evasion of estate taxes by gifts made before, but in contemplation of, death. It is thus an enactment in aid of, and an integral part of, the legislative scheme of taxation of transfers at death."

The value which is included in the estate is the value of the transferred property at the death of the donor. If a man in the prime of life, with no expectation of death except that death at some time is inevitable, made a gift for the very purpose of avoiding at some time the estate tax, then continued in life for fifty years, it cannot be reasonably said that Congress intended to follow that property for a half century and include its value

at the death of the donor in his estate. If such gift by one man happened to be of property consumed in the use before donor's death, it would have no value to be included in his estate, whereas if such a gift by another man was of property not consumed in the use, its value would be included in his estate. Such construction would lead to inequality of taxation, depending upon the character of property. Moreover, such a gift would in no sense be a substitute for a will, motivated by a desire that the donee have the benefit of the property after the donor's death. It would not accomplish or be designed to accomplish, in substance, the same result as a will. The statute did not intend to prevent a gift for the purpose of avoiding estate taxes, but did intend to retain in the estate property transferred in form by a gift, but in fact by a will.

Congress has not undertaken to penalize a desire or motive to avoid taxes, or an effort to avoid taxes in any legal way. In fact, a desire or intention to avoid taxes, if legally possible, might well be assumed in any transaction. On the other hand, Congress by implication recognizes the existence of the well-nigh universal desire and purpose to handle transactions in such a way as legally to avoid taxes. Accordingly, Congress simply enacted that certain kinds of transfers should not have such legal effect.

■ In this case the donor was a lawyer and presumably was acquainted with tax statutes and the court decisions construing tax statutes. He made the 1925 and 1934 trusts for reasons associated with continued life and not in contemplation of death in the sense of the statute. He probably made them purposely in such form as would avoid estate taxes under the law as construed at that time. This he had a legal right to do, the transfers not being made in contemplation of death except in the general sense. When his attention was called to a construction of the law which would leave the property in his estate for tax purposes, he released the power. He did that, no doubt, to make effective his original design to take the property out of his estate. He had a legal right to do that, unless his motive in executing the release grew out of a desire to effect in substance a testamentary disposition of the property; that is, a desire to make the property available for the benefit of the donees after his death. His whole purpose in executing the trusts originally was to give the donees the benefit of the property during his life without waiting until his death. The release placed the property irrevocably for their benefit during his life. He made the release, not to afford them the use of the property after his death substantially as if he had made a will, but for the purpose, without regard to when his death might occur, of taking the property out of his estate. He had a right to do that, if he was not moved to execute the release by the thought of approaching death, that is to say, by the thought that in a comparatively short time he would be forced to surrender ownership, whether by gift or will or otherwise, because he would be dead, and that he desired the donees to have the property after his death and that his remaining time was short enough to render the control reserved by the power relatively unimportant, and that its release would in substance pass the property to the donees for their benefit after his death. His purpose to avoid estate taxes is not controlling. If he made the release in contemplation of death in the statutory sense, the estate is subject to the tax, even if he had not had the tax in mind; and if the release was not made in contemplation of death, in some special sense, the estate is not subject to the tax, even if he did intend to avoid the tax. The question is whether he made the release as a practical substitute for a testamentary disposition.

From the evidence in this case there appears no reason to think that the donor's age or physical condition had anything to do with his decision to execute the release. He had formed the trusts for reasons associated with life and without regard to his own death, except in the sense that all men must die some time, and, as he had a right to do, he put the transfers in a form which, under the law as then construed, he thought took the property out of his estate. He made the release, not because he had in mind thereby to effect substantially a testamentary disposition in a different form, but because he desired to take the property out of his estate as he thought he had already done. He was not contemplating his death, except in the general sense, but was motivated by what he considered a change in the law, and made the release to effect his original intention without regard to when his death might occur. In the same situation he

would probably have made the release forty years ago.

As a basis for its contention that, regardless of other considerations, the intention to avoid the tax concludes the question of taxability, the government relies upon certain cases which do not necessarily support that position. The Wells case does not so decide. Another case is First Trust & Deposit Co. v. Shaughnessy, 2 Cir., 134 F.2d 940, in which the court cited the Wells case and said that where there is one desire to dispose of property after donor's death and another desire to dispose of it before his death, the question of estate tax depends upon which motive preponderates. However, the court said also in that case that the plan devised clearly amounted to a post-mortem disposition. In the present case, there was no desire to make a post-mortem disposition. Neither the original gifts nor the release of the power amounted to a substitute for a will. Since the release did not amount, in effect to a disposition of property after donor's death, the fact that he made the release to avoid estate taxes does not create the necessity of weighing motives to dispose of property before and after death.

In the Bowers case, Farmers Loan & Trust Co. v. Bowers, 2 Cir., 68 F.2d 916, 924, the court said the gift was "in fact made in contemplation of death, for it was a substitute for a will." On page 924 of the opinion in 68 F.2d, are found these words, "When the Wells case said that the motive to escape estate taxes must predominate," etc. I do not read the Wells case so to say. The Wells case was not comparing a motive to avoid taxes with some other motive but was weighing a motive to make, in effect, a testamentary disposition against a motive to make a gift associated with continued life. That case, after stating that the statute does not refer to the general expectation of death which all entertain, says in the next sentence, "It must be a particular concern, giving rise to a definite motive." The government in the present case assumes that a motive to avoid estate taxes is identical with a motive to make a testamentary disposition. The statute does not so read and the Wells case does not so hold. The statute refers to a "transfer made in contemplation of death" and the Wells case says those words mean something other than general expectation of death, and require a special concern sufficient to generate a desire to dispose of property after death. It is a special contemplation of death under circumstances which cause the donor to desire to dispose of his property as ordinarily he would do by will. If, in that state of mind, he devises some form of transfer which is substantially a substitute for a will, then the transfer is within the statute. A will may be made in contemplation of death in the general sense, but a transfer under the tax statute must amount to a testamentary disposition which is motivated by contemplation of death in some other and special sense.

In Farmers' Loan & Trust Co. v. Bowers, 2 Cir., 98 F.2d 794, 799, the court said:

"It may be true that transfers made by one in good health and in the prime of life were not intended by Congress to be within the statute merely because the transferor had the saving of death duties in mind. But motives such as escaping estate taxes or anticipating testamentary provisions when actuating an old man in failing health who was giving away nearly all his remaining property certainly bring the transfers within a statute aimed at reaching substitutes for testamentary dispositions and preventing evasion of estate taxes."

That language probably means only that the facts in that case showed a testamentary disposition made in another form for the purpose of avoiding estate taxes. In view of the first sentence quoted, the court did not mean that a motive to avoid estate taxes alone brings a transfer within the statute. In that case the transfer was held to be a substitute for a will. There was an old man in failing health who was giving away nearly all his property and doing it in a way which served substantially as a will. In the present case, the donor, though old, was not considering his approaching death in the sense of the statute and he retained in his estate nearly a million dollars which he did not attempt to dispose of by a transfer in the nature of a will. If a transfer is not a substitute for a will, it is not covered by the statute.

Congress, no doubt, assumed that normal human instincts would prevent persons, who have no reason to anticipate death except in the general sense, from absolutely divorcing themselves from the ownership and control of their property just to avoid estate taxes. At any rate, Congress did not attempt to legislate with reference

to that kind of situation. However, Congress did consider that persons who, by reason of age, bad health or any other cause, realize that their own enjoyment of their property is approaching the end, would naturally avoid estate taxes if they could do so legally and would probably devise methods of doing so which would enable them to direct disposition of their property after death and would for practical purposes serve as an approximate and fairly satisfactory substitute for a will. Congress did legislate with reference to that situation and it is only in some such special circumstance in which the thought of approaching death generates a desire to make a post-mortem disposition of property, that the statute was intended to apply. If Congress had intended the statute to apply to a transfer made for the purpose of avoiding the tax, without more and regardless of all other circumstances, it probably would have said so. Instead, Congress, included transfers made "in contemplation of or intended to take effect in possession or enjoyment at or after his death." A transfer to take effect in possession or enjoyment at death is not a will but the result accomplished so closely approximates that of a will as to make such transfer available, for practical purposes, as a substitute for a will. Likewise, a transfer in contemplation of death, though it takes effect before death, may be employed as a practical substitute for a will. Whether a transfer before death is to be regarded as a substitute for a will depends upon the state of mind of the donor with reference to his death. To make it a substitute, the donor's thoughts as to his death must lead him to the belief that in view of the time he has to live the transfer will have substantially the same effect as a will. However, if the facts show that the donor made a gift simply to avoid estate taxes but that the only consideration he gave to the fact of his death was to be conscious of inevitable death at some time, then the transfer is not to be regarded as a substitute for a will, made in contemplation of death in the statutory sense.

In this case, while the release was made to avoid estate taxes, the donor was not moved to make it by any expectation of death except in the general sense. He made the original gifts because of what he considered the needs of his children in his lifetime. He made them, as he thought, in such a way as to avoid the tax, but not because he thought of his death in any special sense and not as any substitute for a will. The release likewise was made to accomplish his original purpose without reference to when he might die and was not, in its effect, a substitute for a testamentary disposition.

In Denniston v. Commissioner, 3 Cir., 106 F.2d 925, it was held that a desire to avoid estate taxes, standing alone, does not constitute the mental state intended by the phrase "in contemplation of death." In other words, the "motive" intended by the statute and to be regarded by the courts as controlling is not a motive to avoid estate taxes but is a motive to make a testamentary disposition growing out of special considerations in the donor's mind affecting the probability of his death.

The burden has been carried in this case and the plaintiff is entitled to recover.