**THORP'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 9389.**

Circuit Court of Appeals, Third Circuit.

Argued Oct. 13, 1947.

Decided Dec. 2, 1947.

W. Denning Stewart, of Pittsburgh, Pa. (Charles M. Thorp, Jr., Lee W. Eckels and Thorp, Bostwick, Reed & Armstrong, all of Pittsburgh, Pa., on the brief), for petitioners.

Morton K. Rothschild, of Washington, D. C. (Sewall Key, Acting Asst. Atty. Gen. and Lee A. Jackson, Special Asst. to the Atty. Gen., on the brief), for respondent.

Before ALBERT LEE STEPHENS, GOODRICH and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

Questions concerning the interpretation and applicability of Section 811 (d) (2) of the Internal Revenue Code, 26 U.S.C.A.Int. Rev.Code, § 811 (d) (2), form the basis of taxpayer's appeal.

In 1918, Charles M. Thorp, the decedent, created an inter vivos trust, of which his wife was made trustee and life beneficiary of the trust income. Paragraphs 5 and 6 of the trust indenture read as follows:

"5. After the death of Jessie B. Thorp [wife of decedent], said income shall be paid to our six children [naming children] * * * in equal shares, during their respective lives. Unless sooner terminated as hereinafter set forth the trust shall continue until the death of the last survivor of said six children. Upon the death of each child during the continuance of the trust the income previously paid to him or her shall thereafter be paid to his or her children, if any, and if there be none then to my surviving children and grandchildren per stirpes. Upon the death of the last surviving one of my said six children the trust shall cease absolutely, and all property held in trust shall be assigned, transferred and delivered to my grandchildren then living and the children then living of any grandchildren then dead, per stirpes, absolutely free and clear of all trusts and conditions.

"6. The trust may, however, be wholly terminated at any time, or in part from time to time, in the following manner. If all the beneficiaries hereinabove named, that is, my wife and my six children, or said children alone after my wife's death, or the survivors of them, shall request a termination in writing directed to the trustees and to me, and I shall in writing delivered to the trustees consent thereto, the trust shall, upon delivery of such request and consent to the trustees, be terminated either wholly or in part, or as to the interest in whole or in part of any of said beneficiaries, in accordance with such request and consent, and the trust property shall be released in whole or in part accordingly, and the portion so released shall be assigned, transferred and conveyed to the beneficiary or beneficiaries designated in said written request to be his or her absolute property, free and clear of all trusts and conditions * * *."

Decedent's wife predeceased him, as did one child, who left no issue. Between 1918 and December 14, 1942, when decedent died, the trust beneficiaries did not request a termination as to all or any part of the trust.

Was the right of decedent a "power * * to alter, amend, or revoke"?[1] Was it exercisable in conjunction with persons "having no substantial adverse interest or interests" in the transferred property?[2] Is taxation of this interest permitted by the Fifth Amendment? The Tax Court has resolved all three issues in the affirmative. 7 T.C. 921 (1946).

The result in this case will be the same whichever of two theories concerning it is adopted. If it falls within the interpretation of Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, which we applied in Commissioner v. Henry's Estate, 3 Cir., 1947, 161 F.2d 574, the decision of the Tax Court must be affirmed. If the facts be construed as not to bring the case within the Dobson rule and examination is made on the merits, the Tax Court's decision must be upheld as correct.

It is clear that a power of termination is included within the phrase "power * * * to alter, amend, or revoke," and also that "decedent's failure to reserve for himself any beneficial interest or power to recapture one is not controlling." Commissioner v. Estate of Holmes, 1946, 326 U.S. 480, 66 S.Ct. 257, 261, 90 L.Ed. 228. Taxpayer argues, however, that decedent could take no action of any kind to effect a termination until the life tenants requested a termination, and that consequently decedent merely reserved a kind of veto privilege. We pass the question whether the trust agreement expressly or impliedly prevented decedent from suggesting to the life tenants that they request termination of the trust; for, regardless of who could set in motion the termination machinery, the trust could be terminated only by the action of the de-

[1] Section 811(d) (2), Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811(d) (2).

[2] Section 81.20(b) (1), Treasury Regulations 105.

cedent in conjunction with others. As a practical matter, to interpret the statutory provision as applying solely when the settlor can take the first step toward terminating the trust would be to sanction "elusive and subtle casuistries which may have their historic justification but possess no relevance for tax purposes." Helvering v. Hallock, 1940, 309 U.S. 106, 118, 60 S.Ct. 444, 450, 84 L.Ed. 604, 125 A.L.R. 1368. We believe the Tax Court to have been fully justified in treating the reserved right of decedent as the kind of "power" contemplated by Section 811 (d) (2) of the Internal Revenue Code. See Paul, Federal Estate and Gift Taxation, § 7.11, pages 326-327.

Decedent, then, at the time of his death had a power of termination[3] which, by the terms of the trust, could be exercised only in conjunction with the five surviving children. If the children had "no substantial adverse interest or interests," inclusion of the remainder interests in decedent's gross estate was required by Section 81.20 (b) (1) of Treasury Regulations 105. On the question whether the interests of the five children were "substantially adverse," the Tax Court said, "Here the persons in whom the right to terminate was reserved were obviously not adversely interested in the exercise of that right as to the remainder—which is the only matter basing the present controversy." Bearing in mind that by exercising their power of termination the children would have received "absolute property" in the corpus, rather than merely the income therefrom, and also the fact that there was a close family relationship,[4] we are not prepared to say that the Tax Court erred in choosing from conflicting inferences the conclusion that their interests were not "substantially adverse." See Commissioner v. Scottish American Co., 1944, 323 U.S. 119, 123-125, 65 S.Ct. 169, 89 L.Ed. 113. It is true that, if one of the beneficiaries[5] died childless, the surviving children and grandchildren would receive a larger share of the income during the continuance of the trust; but the possibility of such expansion of their interests does not compel the conclusion that their position was "substantially adverse."

Taxpayer's further contention that a beneficiary of a trust is "adverse to the grantor * * * regardless of whether a change would benefit or injure him" not only rejects the ordinary meaning of the word "adverse,"[6] but also meets such insurmountable obstacles as Helvering v. City Bank Co., supra, 296 U.S. 85 at page 90, 56 S.Ct. 70, 80 L.Ed. 60, and the express language of the Tax Court in Lit v. Commissioner, 1933, 28 B.T.A. 853, 860, 861, affirmed by this court in 1934, 72 F.2d 551. A previous decision of our court has explained why Reinecke v. Northern Trust Co., 1929, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397, upon which taxpayer relies, is not to the contrary. In Blunt v. Kelly, 3 Cir., 1942, 131 F.2d 632, 634, we pointed out that, in the Reinecke case, the "interest retained by the settlor depended upon the uncontrolled decision of the beneficiary to relinquish his interest in favor of the settlor," a factor which was not present in the case at bar. See also Reinecke v. Smith, 1933, 289 U.S. 172, 176, 53 S.Ct. 570, 77 L.Ed. 1109. We conclude, therefore, that the

---

[3] We note further that conceivably decedent might have survived all remaindermen. As to the taxability of such an interest, see Commissioner v. Church's Estate, 3 Cir., 1947, 161 F.2d 11, certiorari granted 331 U.S. 803, 67 S.Ct. 1738.

[4] See Helvering v. Clifford, 1940, 309 U.S. 331, 335, 60 S.Ct. 554, 84 L.Ed. 788, and Helvering v. City Bank Co., 1935, 296 U.S. 85, 90, 56 S.Ct. 70, 80 L.Ed. 60.

[5] We use the word "beneficiaries" as synonymous with "children" in the case sub judice, in accordance with the manner in which decedent used the word in paragraph 6 of the trust instrument.

[6] "Adverse" is defined in Webster's New International Dictionary (2d Ed.), as follows: 1. Acting against, or in a contrary direction; opposed; antagonistic, as adverse winds; a spirit adverse to distinctions of caste. 2. In hostile opposition to one's interests; hence, unpropitious; calamitous; afflictive; as, circumstances adverse to success; adverse fortune. 3. Opposite. "Calpe's adverse height." Byron. 4. Bot. * * * 5. Law. Having opposing interests; having interests for the preservation of which opposition is essential.

Tax Court was within its proper scope in deciding that the instant trust comes within the provisions of Section 811 (d) (2) of the Internal Revenue Code and Section 81.20 (b) (1) of Treasury Regulations 105.

■ Finally, taxpayer urges that application of Section 811 (d) (2) of the Internal Revenue Code to this trust is forbidden by the due process clause, because the statutory provision was enacted subsequent to the creation of the trust. Taxpayer places great reliance upon Helvering v. Helmholz, 1935, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76, and White v. Poor, 1935, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80. We need not decide to what extent, if any, the Helmholz case has survived the impact of the principles enunciated in such cases as Helvering v. Hallock, supra, and Commissioner v. Estate of Holmes, supra.[7] It is sufficient to note that, in Union Trust Co. v. Driscoll, 3 Cir., 1943, 138 F.2d 152, 155, certiorari denied, 1944, 321 U.S. 764, 64 S.Ct. 521, 88 L.Ed. 1061, a tax imposed upon a power the settlor gave herself as trustee was upheld by this court, although the trust was created prior to the passage of the provision involved in the case at bar. That Helvering v. Helmholz was carefully considered in the Union Trust case is evident from the fact that it is cited in the dissenting opinion. Likewise, the Union Trust case distinguished White v. Poor, supra, because the settlor "acquired power to terminate the trust not by any reservation of her own but by the action of the trustees," who elected her to fill a trustee vacancy. See also Howard v. United States, 5 Cir., 1942, 125 F.2d 986, 989. In view of our affirmance of the Tax Court findings that decedent did have a power of termination and that the interest of the beneficiaries was not substantially adverse, the Union Trust case becomes indistinguishable from that at bar; for in both cases the power was to be exercised in conjunction with persons not substantially adverse, and in both cases the trust was created prior to the passage of the statutory provision. The Supreme Court has cited with apparent approval the Union Trust case in Commissioner v. Estate of Holmes, supra, 326 U.S. at page 489, 66 S.Ct. 257, 90 L.Ed. 228. We are not disposed to consider anew the issue decided in the Union Trust case.

As a practical matter, decedent in the case at bar could have released his power at any time prior to the passage of the gift tax statute in 1932 without incurring any tax liability therefor. Avoidance of Section 811 (d) (2) lay completely within his control. Instead, he chose to retain his power, by means of which the enjoyment of the property by his grandchildren was not placed beyond his recall until the power was extinguished by his death. Imposition of the tax on a power reserved by him and still existing up to his death does not appear to us unreasonably harsh, oppressive, or an arbitrary ignoring of recognized rights. See Helvering v. City Bank Co., supra, 296 U.S. at page 90, 56 S.Ct. 70, 80 L.Ed. 60; United States v. Jacobs, 1939, 306 U.S. 363, 367, 59 S.Ct. 551, 83 L.Ed. 763; McCaughn v. Fidelity Trust Co., 3 Cir., 1929, 34 F.2d 443; Wilgard Realty Co. v. Commissioner, 2 Cir., 1942, 127 F.2d 514, 517, certiorari denied 1942, 317 U.S. 655, 63 S.Ct. 52, 87 L.Ed. 527; and Union Trust Co. of Pittsburgh v. Driscoll, supra, 138 F.2d at page 154.

For the reasons stated, the judgment of the Tax Court will be affirmed.

---

[7] See Hurd v. Commissioner, 1 Cir., 1947, 160 F.2d 610, 612, 613. We have been unable to find any citation of the Helmholz case by the Supreme Court since the decision in Helvering v. Hallock, 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368.