MORRISON–KNUDSEN COMPANY, INC. & ASSOCIATES, a joint venture consisting of Morrison-Knudsen Company, Inc., a corporation, Paul Hardeman, Inc., a corporation, Johnson, Drake & Piper, Incorporated, a corporation, Olson Construction Company, a corporation, and F. E. Young Construction Co., a corporation, Appellant,

v.

ROCKY MOUNTAIN CHAPTER, NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, a corporation, Appellee.

No. 8234.

United States Court of Appeals Tenth Circuit.

Dec. 21, 1966.

See also, D.C., 236 F.Supp. 436.

John N. Dahle, Denver, Colo. (Grant, Shafroth, Toll & McHendrie, Denver, Colo., and Ronald C. Butz, Denver, Colo., on the brief), for appellant.

George Louis Creamer, Creamer & Creamer, Gerald M. Quiat, and Quiat, Seaman & Quiat, Denver, Colo., for appellee.

Before BREITENSTEIN and SETH, Circuit Judges, and KERR, District Judge.

KERR, District Judge.

Appellant-plaintiff, Morrison-Knudsen Company, Inc., & Associates is a joint venture consisting of Morrison-Knudsen Company, Inc., a Delaware corporation; Paul Hardeman, Inc., a California corporation; Johnson, Drake & Piper, Incorporated, a Minnesota corporation; Olson Construction Company, a Nebraska corporation; and F. E. Young Construction Co., a California corporation. It instituted this action to recover $34,457.81, allegedly an over-payment made to the Rocky Mountain Chapter, National Electrical Contractors Association.[1] Said defendant-appellee is a corporation not for profit, organized and existing as such under the laws of the state of Colorado. At all times pertinent hereto it was so incorporated and has been so operating. Jurisdiction was based on diversity. Tried to the court without a jury, the district court made clear, detailed findings of fact and conclusions of law, dis-

---

1. Hereinafter referred to as NECA.

missed plaintiff's action, and granted judgment in favor of defendant for its costs.

On April 2, 1959, those corporations executed a joint venture agreement for the purpose of submitting a joint bid to the United States Army Corps of Engineers for a contract for the construction of a missile installation at Lowry Air Force Base, Denver, Colorado, and for the purpose of performing such contract. Morrison-Knudsen was designated the sponsoring joint venturer under whose direction the parties thereto agreed to perform the construction contract. There was a joint venture account for all the funds advanced or borrowed by the parties and for all the revenue received from the performance of the construction contract. The joint venture agreement provided that the parties' interests in the profits, assets, property, contributions, and in all moneys received and losses incurred in connection with the construction contract would be in accordance with the percentage of interest each party had in the joint venture agreement.

Of all the corporations comprising the joint venture Paul Hardeman, Inc., was the only electrical contractor, licensed as such in the state of Colorado, and qualified to be and in fact a member of the National Electrical Contractors Association. In compliance with that Association's Constitution and By-Laws, Paul Hardeman, Inc., applied for a temporary membership in the Rocky Mountain Chapter of the National Electrical Contractors Association. Its application was accepted by NECA on August 25, 1960, and was filed with the National Electrical Contractors Association on September 6, 1960. There is no dispute concerning the services available to Paul Hardeman, Inc., because of such temporary membership. It was a permanent member of the Orange County, Califor-nia Chapter of National Electrical Contractors Association and was familiar with the services to which it was entitled as a member. It was also familiar with the fees and service charges which were imposed upon members by NECA's by-laws.

Section 3 of Article XI of the by-laws in effect in 1960 when Paul Hardeman, Inc., was accepted as a temporary member of the Rocky Mountain Chapter, NECA, required the members to pay to the defendant-appellee a service charge based upon a graduated scale ranging from 1.5% to .002 of the gross payroll for electrical wages paid by the member to electrical workers. At that time, the by-laws contained no refund provisions. On March 6, 1961, appellee's by-laws were amended to discontinue the graduated scale for service charges and to charge a flat one per cent of the gross payroll for electrical wages paid to electrical workers by the member.[2]

During the year 1961, the defendant-appellee was paid the sum of $39,657.81 as service charges on the gross wages paid the electrical workers under the construction contract being performed by the joint venture. The remitters were Paul Hardeman, Inc., and an entity denominated "Morrison-Knudsen-Hardeman", which identification appears to have been adopted by the joint venture for bookkeeping purposes. Despite a certain obscurity shadowing such entity, the record indicates that the payments were made from joint venture funds.

Appellant claims it inadvertently and mistakenly made an overpayment of service charges for the year 1961 and that it is entitled to a refund of $34,457.81, being the excess over $5,200.00 which it paid to appellee. Members of NECA are required to make the service charge payments every week; there is no by-law permitting the payments to cease when a maximum sum has been remitted; there

---

**2.** Article XIII, Section 4, amended the service charge assessment to read as follows: "A service charge of 1% of the gross electrical productive payroll be assessed each member (permanent and/or temporary) on all classes of electrical labor employed by him in each of the four wage areas served by this Chapter. * * *"

is no ceiling on the amount to be remitted. Appellant did not in fact make an overpayment of service charges. It paid only the charges which it was legally obligated to pay under the by-laws.

Subsequent to the approval of the temporary membership of Paul Hardeman, Inc., Article XIII, Section 7 of the by-laws as amended reads as follows:

"Maximum Remittance. Sec. 7. Should the combination sums of Dues and/or Service Charges actually remitted exceed the amount of 5,200 dollars in any one calendar year per wage area per member the amount in excess shall be refunded upon the approval of a request for refund. The request for refund shall be submitted in writing to the Board of Directors prior to February 1st of the year immediately following that year in which the excess occurred."

On or about December 16, 1962, Paul Hardeman, Inc., made a written request for a refund of service charges paid in 1961 in excess of $5,200.00, namely, $34,457.81. Such request was denied by the Board of Directors on the ground that the appellant did not make its request prior to February 1, 1962, as required by Section 7, of Article XIII, of the by-laws. Subsequently, the Board of Directors granted appellant the opportunity to assert its refund claim orally before the Board, and in April of 1963, the Board reaffirmed its denial of appellant's claim. The parties do not dispute the trial court's finding that on or before February 1, 1962, neither Paul Hardeman, Inc., nor the entity identified as "Morrison-Knudsen-Hardeman", nor the appellant joint venture, nor anyone for or on behalf of any of those persons or entities filed any oral or written request for any refund of any sum claimed to have been paid in excess of $5,200.00 or any other amount, to the appellee or with its Board of Directors.

■■ It is the appellant's position, however, that it has a fixed right to the refund of service charges paid in 1961 in excess of $5,200.00. Arguing that Article XIII, Section 7, is not mandatory, but is directory merely, appellant suggests extrinsic aids to ascertain the intent, purposes, and consequences of that section of the by-laws. Such reliance on statutory construction is inappropriate. The provisions of Article XIII, Section 7, are explicit. They leave no room to doubt what was intended by NECA. The Board of Directors can authorize the payment of a refund to a member only as provided in the by-laws; the Board can make such authorization only if the request for the refund is made in writing and made prior to February 1, 1962. We are not permitted to construe language which is so plain as to require no construction.[3]

■ Paul Hardeman, Inc., and through it, the appellant, contracted and agreed to abide by and to be bound by the by-laws.[4] Such contractual relation harmonizes with the substantive law of Colorado.[5] Appellant does not deny that it is bound by the by-laws, but it attempts to construe them to fit the situa-

3. Helvering, Commissioner of Internal Revenue v. City Bank Farmers Trust Co., Trustee, 296 U.S. 85, 56 S.Ct. 70, 80 L. Ed. 62 (1935).

4. Application for membership in NECA signed by Paul Hardeman, Inc., by H. John Call, reads in part as follows: "Pursuant to the By-Laws of the National Electrical Contractors Association * * * we agree, if elected to temporary membership, to abide by the By-Laws, Rules and Regulations of the Chapter now in effect and that may be regularly adopted with the approval of the National Association. * * * ".

Article XII, Section 9. "It is understood and agreed that the By-Laws of this Chapter constitute a contractual relation by, between and among the members. * * * Each member upon becoming a member agrees to be bound by each and every provision of the Constitution of the National Electrical Contractors Association and of these By-Laws, * * * ".

5. See Supply Ditch Company v. Elliott, et al., 10 Colo. 327, 15 P. 691 (1887).

tion which it itself created. This court cannot and will not revise the contract to supply a waiver of the conditions under which a refund of excess payments may be made.

■ The refund right is not absolute. The only way NECA can refund any service charge payments is in accordance with the by-laws which set out conditions precedent to the recovery of a refund for excessive service charge payments, namely, (1) written request therefor, (2) submission of such request prior to February 1, 1962, and (3) approval of such request for a refund. There is not a scintilla of evidence to show that the Board of Directors has any discretion in granting a refund under any other circumstances. Appellant is precluded from receiving a refund by its own delay and failure to file its written request prior to February 1, 1962. There is nothing in the record and there are no legal tenets which support appellant's theory that it has a fixed right to the claimed refund.

■ Appellant does not challenge the trial court's finding and conclusion that it is charged with and had constructive knowledge of the by-laws of NECA, including Article XIII, Section 7. Appellant knew of the 1961 amendment in the rate of assessing the service charge; it made its weekly payments according to the lower rate and on the new forms supplied after the enactment of the amendment. Appellant was put on notice of the amended by-laws, of the available refund provisions, and of the conditions attached to such refunds. The membership of Paul Hardeman, Inc., in the appellee corporation gives rise to the presumption that such member and the appellant claiming rights through it, had notice of its by-laws.[6]

■ The facts and the law fully sustain the trial court's findings on the issues of estoppel and forfeiture. NECA is a non-profit corporation. Its funds were expended for legitimate corporate purposes. It budgets its funds annually; on and after February 1 of each year it expects to know whether any of its funds should be allocated for the payment of refund requests. Absent such requests by that date, it is warranted to assume that no tardy requests will be forthcoming and that none will be granted. In reliance upon the absence of refund claims, it budgets and spends the money in its possession for the benefit of the members of NECA. If it were required to consider delinquent requests for refunds contrary to the provisions of Article XIII, Section 7, it would be forced to acquire additional funds to its detriment and to that of its members. As found by the trial court, appellant is estopped to assert its claim for a refund after appellee has changed its position, to its detriment, upon the reliance on the fact that one of its members would not assert an untimely claim for refund.

From our review of the entire record we conclude that the findings on the crucial issues were not clearly erroneous and that the district court correctly followed the applicable law. See United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

Affirmed.

■

6. Model Land and Irrigation Company v. Madsen, 87 Colo. 166, 285 P. 1100 (1930); Callahan v. Chilcott D. Co., 37 Colo. 331, 86 P. 123 (1906).